# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| EMILIANO DAVILA, Individually and for Others Similarly Situated,<br><br>　　Plaintiff,<br><br>v.<br><br>SESCO CEMENT, CORP.<br><br>　　Defendant. | Case No. _____<br><br>Collective Action<br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Emiliano Davila ("Plaintiff" or "Davila") worked for Sesco Cement, Corp. ("Sesco") as a welder.

2. Sesco does not pay overtime to the hourly workers they employ as required by the Fair Labor Standards Act (FLSA).

3. Instead, Sesco paid Davila, and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

4. Davila brings this collective action to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

5. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Sesco's corporate headquarters are located in this District and a significant amount of the facts giving rise to the claims asserted in this case took place in this District.

## PARTIES

7. Davila was an hourly welder performing work on behalf of Sesco.

8. His written consent is attached as Exhibit A.

9. Sesco is a cement manufacturer and construction project company with projects in Texas and the surrounding states.[1]

10. Sesco has a corporate office in Houston, Harris County, Texas.

11. From approximately April 2020 until January 2021, Davila worked for Sesco providing welding services.

12. Sesco assigned Davila to work in the construction of a new concrete manufacturing and storage facility.

13. Throughout his employment with Sesco, Davila was paid hourly with no overtime compensation and was misclassified as an independent contractor.

14. Davila brings this action on behalf of himself and other similarly situated workers who were paid by Sesco's straight time for overtime system.

15. Sesco paid each of these workers the same amount for each hour worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

16. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All workers performing work for, or on behalf of, Sesco Cement, Corp. during the past 3 years who were paid straight time for overtime (the "Putative Class Members").**

17. Davila seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

---

[1] https://www.sescocement.us/our-company.

18. Sesco Concrete, Corp. may be served through its registered agent for process, Davenport Law Firm PC, 2009 Lubbock Street, Houston, Texas 77007.

## COVERAGE UNDER THE FLSA

19. At all times relevant, Sesco was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times relevant, Sesco was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times relevant, Sesco was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person such as oilfield equipment, tolls, cables, wrenches, screwdrivers, computers, automobiles, and cell phones and in that said enterprises have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22. Davila and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

23. As will be shown through this litigation, Sesco treated Davila and the Putative Class Members as employees and uniformly dictated the pay practices to which Davila and the Putative Class Members were subjected.

24. Sesco's misclassification of Davila and the Putative Class Members as independent contractors does not alter their status as employers for purposes of the FLSA.

## FACTS

25. The Sesco Group, of which Sesco Cement Corp. is a subsidiary, is a multi-billion dollar materials and transportation enterprise.2

26. Under that umbrella, Sesco Cement Corp. is a cement manufacturing corporation with multiple corporate and manufacturing facilities in and around Houston. Id.

27. In the process of building and maintaining these facilities, Sesco retained the services of of welders and welder helpers to perform welding related construction work.

28. Sesco directly contracted with Davila and assigned him to work for Sesco performing welding services on Sesco's behalf.

29. Sesco determined the terms and conditions of employment for the workers performing welding services for it (including Davila).

30. For instance, Sesco hired and fired, supervised and controlled the scope of work performed, set pay, set work schedules, determined hours, and approved time sheets with respect to Davila and the Putative Class Members.

31. Davila was an hourly welder performing work on behalf of Sesco.

32. Davila reported the hours he worked to Sesco on a regular basis.

33. If Davila worked fewer than 40 hours in a week during his employment with Sesco, he would be paid only for the hours worked.

34. Davila regularly worked over 40 hours in a week during his employment with Sesco.

35. In fact, Davila typically worked 50-65 hours a week during his time working for Sesco.

36. Based on his experience working for Sesco, Davila knows the Putative Class Members worked similar hours during their employment with Sesco.

---

2 https://www.sescocement.us/our-company.

37. The hours Davila and the Putative Class Members' worked during their employment with Sesco are reflected in Sesco' records.

38. Sesco paid Davila at the same hourly rate for all hours worked, including those in excess of 40 in a workweek, during his employment with Sesco.

39. Rather than receiving time and a half as required by the FLSA, Davila only received "straight time" pay for overtime hours worked while employed by Sesco.

40. Davila worked for Sesco through Sesco from approximately April 2020 until January 2021 as a welder.

41. Davila was paid on an hourly basis.

42. Davila was not paid on a salary basis.

43. Davila was never received any salary guarantee.

44. Davila was never paid any guaranteed salary.

45. Davila was only paid for the hours he worked.

46. Sesco paid Davila $75 for each hour worked.

47. Sesco typically scheduled Davila to work 10-12 hour shifts, for as many as 5-6 days a week.

48. But Sesco did not pay Davila overtime.

49. The work Davila performed was an essential part of Sesco's core products and/or services.

50. The work Davila performed was an essential part of producing Sesco's core products and/or services.

51. Sesco exercised control (directly or jointly through another company) over all aspects of Davila's job. For instance, Sesco supervised and controlled the scope of work he performed on Sesco's

behalf, required him to follow its policies and procedures, set his pay rate, set his work schedule, and approved his time sheets.

52. Davila did not make any substantial investment in order to perform the work Sesco required of him.

53. Sesco determined Davila's opportunity for profit and loss.

54. Davila's earning opportunity was based on the number of days Sesco scheduled him to work and the rate of pay Sesco agreed to pay him.

55. Davila was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform his job duties.

56. Davila was not employed by Sesco and Sesco on a project-by-project basis, but rather on a consistent basis.

57. While Davila was classified as an independent contractor, he was regularly on call for Sesco and was expected to drop everything and work whenever needed.

58. Sesco controlled all of the significant or meaningful aspects of the job duties performed by Davila, including requiring him to adhere to Sesco company policies and procedures.

59. Sesco controlled the hours and locations Davila worked, the raw materials used, and the rates of pay he received.

60. Even when Davila worked away from Sesco's offices or job sites without the presence of a direct supervisor, Sesco still controlled all aspects of Davila's job activities by enforcing mandatory compliance with Sesco's policies and procedures.

61. Sesco made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Davila worked in.

62. Davila did not incur operating expenses like rent, payroll, marketing, and insurance.

63. Davila was economically dependent on Sesco during his employment.

64. Sesco set Davila's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while he was working on jobs for Sesco.

65. Very little in terms of independent business initiative, was required of Davila to perform his job duties.

66. Indeed, the daily and weekly activities of Davila and the Putative Class Members were routine and largely governed by Sesco's directions and mandated by Sesco.

67. Virtually every job function performed by Davila and the Putative Class Members was pre-determined by Sesco, including the tools and materials to use at a job site, the schedule of work, and related instruction and direction regarding the construction of the Sesco facility.

68. Davila and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

69. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to welding and construction operations in the field.

70. Davila performed routine welding duties that were largely dictated by Sesco.

71. All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

72. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

73. The Putative Class Members regularly worked in excess of 40 hours each week.

74. Like Davila, the Putative Class Members were generally scheduled for daily shifts of 10 (or more) hours for weeks at a time.

75. Sesco did not pay Davila on a salary basis.

76. Sesco did not pay the Putative Class Members on a salary basis.

77. Sesco paid the Davila on an hourly basis.

78. Sesco paid the Putative Class Members on an hourly basis.

79. Davila regularly worked more than 40 hours in a single workweek.

80. The Putative Class Members regularly worked more than 40 hours in a single workweek.

81. Sesco failed to pay Davila overtime for hours worked in excess of 40 hours in a single workweek.

82. Sesco failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

83. Sesco knew, or acted with reckless disregard for whether, Davila and the Putative Class Members were misclassified as independent contractors.

84. Sesco's policy of classifying Davila and the Putative Class Members as independent contractors violates the FLSA because these workers are, for the purposes of the FLSA, employees.

85. Sesco's policy of failing to pay Davila and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees entitled to overtime compensation.

86. Sesco's straight time for overtime system violates the FLSA because Davila and the other straight time for overtime workers classified as independent contractors did not receive proper overtime pay for hours worked over 40 hours each week.

87. Because Davila and the Putative Class Members were misclassified as independent contractors by Sesco, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

## FLSA VIOLATIONS

88. Sesco violated, and are violating, the FLSA by employing Davila and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.

89. Sesco knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Davila and the Putative Class Members overtime.

90. Sesco's failure to pay overtime to Davila and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

91. Accordingly, Davila and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

92. The illegal "straight time for overtime" practice Sesco imposed on Davila was imposed on the Putative Class Members.

93. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

94. Numerous other individuals who worked with Davila were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

95. Based on his experiences and tenure with Sesco, Davila is aware that Sesco's illegal practices were imposed on other Putative Class Members.

96. The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

97. Sesco's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

98. Davila's experiences are therefore typical of the experiences of the Putative Class Members.

99. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

100. Davila has no interests contrary to, or in conflict with, the Putative Class Members.

101. Like each Putative Class Member, Davila has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

102. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

103. Absent a collective action, many members of the Putative Class will not obtain redress of their injuries and Sesco will reap the unjust benefits of violating the FLSA.

104. Furthermore, even if some of the Putative Class Members could afford individual litigation against Sesco, it would be unduly burdensome to the judicial system.

105. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

106. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Sesco employed the members of the Class within the meaning of the FLSA;

   b. Whether the Putative Class Members were improperly classified as independent contractors;

   c. Whether Sesco's decision to classify the members of the Class as independent contractors was made in good faith;

   d. Whether Sesco's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

   e. Whether Sesco's violation of the FLSA was willful; and

   f. Whether Sesco's illegal pay practices were applied to the Putative Class Members.

107. Davila and the Putative Class Members sustained damages arising out of Sesco's illegal and uniform employment policy.

108. Davila knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

109. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

110. Davila demands a trial by jury.

## RELIEF SOUGHT

111. WHEREFORE, Davila prays for judgment against Sesco as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Davila and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding Sesco liable to Davila and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**